IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| John Barrett, William Bradford, George Chambers, James Chisolm, Louis Dannecker, Ronald DeLong, Trenton Doane, Robert Durr, Dana Gabel, Joseph Giacomin, Della Hamill, Ralph Itzo, Charles Kiehl, Leroy Miller, Virginie Ravareau, Leendert Ringlever, Nizam Shaikh, Frank Snyder, John Wagle, III, James West, Melvin Wilkerson, Dorothy Williams, Terry Wood, Ronald Zinski, and Joseph Zolkowski<br>　　Plaintiffs,<br><br>　　vs.<br><br>Viacom, Inc., successor by merger to CBS Corporation, formerly known as Westinghouse Electric Corporation<br><br>　　Defendant. | Civil Action No. 4-608 |

AMBROSE, Chief District Judge

Opinion and Order of Court

Defendant Viacom, Inc. ("Viacom") moves for summary judgment with respect to the age discrimination claim asserted by Plaintiff John Wagle III. See Defendant's Motion For Summary Judgment as to the Claims of John Wagle III (Docket No. [58]).[1] It has already been established that Wagle did not submit a timely charge to the EEOC within 300 days of his termination. Thus, absent application of the equitable

---

[1] Given the number of Opinions issued in this and related cases, the parties are presumed familiar with the facts and relevant history. Accordingly, I will limit myself to the salient details.

1

tolling doctrine, his claim is untimely and Viacom is entitled to summary judgment.

After careful consideration, and for the reasons set forth below, I agree that Viacom is entitled to the entry of summary judgment.

Standard of Review

Summary judgment may only be granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there is no genuine issue as to any material facts and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material when it might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Rule 56 mandates the entry of judgment, after adequate time for discovery and upon motion, against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In considering a motion for summary judgment, the Court must examine the facts in the light most favorable to the party opposing the motion. International Raw Materials, Ltd. v. Stauffer Chemical Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the nonmoving party. Anderson, 477 U.S. at 248. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be

2

insufficient to carry the non-movant's burden of proof at trial. Celotex, 477 U.S. at 322. Once the moving party satisfies its burden, the burden shifts to the non-moving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324.

## Analysis

In Ruehl v. Viacom, 500 F.3d 375, 384 (3d Cir. 2007), the Third Circuit Court reaffirmed the two requirements for equitable tolling in an employment discrimination case:

> the equitable tolling doctrine may excuse the plaintiff's non-compliance with the statutory limitations provision at issue when it appears that (1) the defendant actively misled the plaintiff respecting the reason for the plaintiff's discharge, *and* (2) this deception *caused* the plaintiff's non-compliance with the limitations provision.

quoting, Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1387 (3d Cir. 1994). In Ruehl, the Third Circuit court determined that Ruehl could not demonstrate that Viacom's alleged deception caused his late filing. Ruehl, 500 F.3d at 385. Specifically, the Court determined that:

> Ruehl admitted at his deposition that he first thought he had been subjected to age discrimination in the summer of 1998:"I guess when I was probably the oldest person in the department that was let go, and I was the only one not offered a job with the outsourcer ... [around] Summer of '98 I guess, you know, around the time of my termination ... (App. At 295.) Ruehl also admitted that in 1994 he thought there may have been age discrimination at Viacom, when, in his presence, Viacom's Chief Financial Officer referred to an older employee as a "blocker," and said that Viacom need to "get him out of here." (App. at 292.) Ruehl perceived this at the time to be the type of "comments [that] were probably made about me the same way when

3

> I wasn't in the room." (Id.)

Ruehl, 500 F.3d at 385. The Third Circuit court reasoned that because these facts, which would have supported Ruehl's cause of action, were known to him at the time of his termination, he could not demonstrate that Viacom's failure to disclose data under the Older Workers' Benefit Protection Act ("OWBPA") caused his failure to pursue a claim. Id.

Viacom believes that Wagle's factual scenario is analogous to Ruehl's. That is, Viacom contends that Wagle knew of facts which would have supported his individual cause of action at or around the time of his termination. Consequently, Viacom reasons, he cannot demonstrate how Viacom's failure to disclose data under the OWBPA caused his failure to timely pursue his claim.

I agree. During his deposition, Wagle admitted that his supervisor told him that he was being discriminated against on the basis of his age:

> Q: Well, I've been informed that my departure – that I was being let go because of my age, and I was told by my supervisor I was being screwed because of my age.
> Q: When was this?
> A: I believe that would be in December.
> Q: Of what year?
> A: Was it '97? I think. It was the date I received my notice that I would be leaving at the end of January of '98, I think. So, it would have been December of '97.

See Wagle Dep., p. 23-24. Wagle also admitted that he realized, at this time, he was being discriminated against on the basis of his age:

> Q: When is the first time you believe you had been discriminated against on the basis of your age?

> A: When I was told I was being terminated and let go in January of '98.
> Q: Did you complain to anyone at that time?
> A: I mentioned to my boss that I realized I was being screwed.

See Wagle Dep., p. 23-24. Indeed, Wagle seems to have understood that he may have had a claim against Viacom at that time:

> Q: Did you believe you had a claim against Westinghouse in December of 1997?
> A: Yes, ma'am.
> Q: Why did you wait until now to become a member of a lawsuit to bring any legal claim?
> A: Because I knew eventually this would come about and I wouldn't have to initiate it and I could opt in.

See Wagle Dep., p. 24-25. Thus, Wagle explains that his failure to pursue his claim was caused, not by Viacom's deception, but by a disinclination to take a proactive approach.

Finally, like Ruehl, Wagle was familiar with management's use of the term "blocker" and even more, knew that prior lay offs had adversely affected older employees:

> Q: How did you know [that a lawsuit would arise]?
> A: Part of my job prior to my termination was handling restructuring accounts. I was responsible for like a balance sheet, and part of that balance sheet was distribution of moneys for pensions, payouts, education, et cetera, for which each time I received a sum of money in the account and a layoff list. Each layoff list was predominantly people 50 and older, and for years prior to this, there had been the rumor of the blocker memo. So, we all at that age were – and once I was given my notice, those accounts were taken away from me. I wasn't privy to any more layoff lists, but I had been privy to them for about 3 years prior to that.

See Wagle Dep., p. 24-25.

Thus, Wagle's deposition testimony establishes that he was explicitly told by his supervisor that he was being discriminated against on the basis of his age; that he believed at the time he was being discriminated against on the basis of his age; that he thought at that time that he had a claim against Viacom; that he had first hand knowledge that in the three years prior to his own termination, layoffs at Viacom had been disproportionately affecting older employees; and he was aware of the use of the term "blocker." As with Ruehl, because these facts were known to Wagle at the time of his termination, Wagle cannot demonstrate that Viacom's failure to disclose data under the Older Workers' Benefit Protection Act ("OWBPA") caused his failure to pursue a claim.[2]

---

[2] In his Affidavit submitted in opposition to the pending Motion, Wagle attempts to blunt the effects of his deposition testimony. For instance, he states that "[e]ven though my manager ... told me that I was 'being screwed because of [my] age,' I deferred to the official reasons given to me by the company in my termination letter." See Docket no. 94-3, paragraph 3. He also states that, "[a]t the time of my deposition, I had the benefit of knowing certain record evidence that had been obtained in the Mueller case. The record evidence included an admission by the company's CEO that he used age as a factor in the lay-off decisions and other evidence that the company engaged in a pattern of conduct of laying off older workers because of their age. It was impossible not to let such evidence influence my testimony. The record evidence also allowed me, in hind sight, to attach significance to certain facts of which I was aware when I was terminated." Id., paragraph 8. I do not find Wagle's statements actually contradict anything that he said in his deposition testimony. He does not state that he did not believe he was discriminated against at the time he was terminated; he does not deny knowing that Viacom management had used the term "blocker" prior to his termination or that prior layoffs had disproportionately affected older workers; nor does he deny understanding at the time of his termination that he had a claim against Viacom. Accordingly, I find the Affidavit to be largely unpersuasive. To the extent that any contradictions exist between the deposition testimony and the Affidavit, I view the Affidavit to be a "sham" within the meaning of Jiminez v. All Am. Rathskeller, Inc., 503 F.3d 247, 253 (3d Cir. 2007); O'Bryant v. City of Reading, 197 Fed. Appx.

---

134, 138 (3d Cir. 2006). "A party may not create a material issue of fact to defeat summary judgment by filing an affidavit disputing his or her sworn testimony without demonstrating a plausible explanation for the conflict." Baer v. Chase, 392 F.3d 609, 624 (3d Cir. 2004) (citations omitted). Wagle's viewing things in "hindsight" is not a plausible explanation for the conflict.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| John Barrett, William Bradford, George Chambers, James Chisolm, Louis Dannecker, Ronald DeLong, Trenton Doane, Robert Durr, Dana Gabel, Joseph Giacomin, Della Hamill, Ralph Itzo, Charles Kiehl, Leroy Miller, Virginie Ravareau, Leendert Ringlever, Nizam Shaikh, Frank Snyder, John Wagle, III, James West, Melvin Wilkerson, Dorothy Williams, Terry Wood, Ronald Zinski, and Joseph Zolkowski<br>Plaintiffs,<br><br>vs.<br><br>Viacom, Inc., successor by merger to CBS Corporation, formerly known as Westinghouse Electric Corporation<br><br>Defendant. | Civil Action No. 4-608 |

AMBROSE, Chief District Judge

## ORDER OF COURT

AND NOW, this 12th day of February, 2009, after careful consideration, and for the reasons set forth in the accompanying Opinion, the Defendant's Motion for Summary Judgment as to the Claims of John Wagle (Docket No. [58]) is hereby GRANTED.

BY THE COURT:

/s/Donetta W. Ambrose
　Donetta W. Ambrose,
　Chief U.S. District Judge